IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:24CR00298 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORY D. DRAKE, | ) | <u>UNITED STATES' SENTENCING</u> |
| | ) | <u>MEMORANDUM FOR DEFENDANT</u> |
| Defendant. | ) | <u>GREGORY D. DRAKE</u> |
| | ) | |
| | ) | |

The United States of America, by and through its counsel, Carol M. Skutnik, Acting United States Attorney, and Brenna L. Fasko, Assistant United States Attorney, respectfully requests that the Court sentence Defendant Gregory Drake ("Drake") the United States requests that the Court impose a sentence consistent with the Plea Agreement negotiated by the parties and, in addition, apply the zero-point offender adjustment. In addition, the United States requests that the Court order him to pay restitution in the amount of $297,969.81. The United States believes that this sentence is sufficient, but not greater than necessary, to comply with the sentencing factors set forth in 18 U.S.C. § 3553.

I.  **APPLICABLE LEGAL STANDARDS**

A well-established legal framework guides the Court's sentencing determination. The advisory Guidelines range serves as "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007); *see also United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006). The Guidelines thus remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses. The Sentencing "Commission fills an important institutional role: It has the capacity courts lack to 'base its determination on empirical data and national experience, guided by a professional staff with appropriate

expertise.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (internal citation omitted). After determining the appropriate Guidelines range, the Court then turns to the familiar factors set forth in 18 U.S.C. § 3553(a).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     OFFENSE CONDUCT

To support its sentencing position, the United States offers the following summary of the facts.  The PSR and the factual basis from the parties' plea agreement also include a description of Drake's offense conduct.  (R. 56: Final PSR, PageID 261-63; R. 37: Drake Plea Agreement, ¶ 22, PageID 187-189).

In May 2022, local Lakewood, Ohio businesses began to report a rash of stolen checks that were either mailed in or out of the Lakewood, Ohio Post Office.  (R. 56: PSR, ¶ 8, PageID 261).  Based on this information, the United States Postal Service -Office of Inspector General ("USPS-OIG") investigated these stolen checks and were able to identify Drake and his co-conspirators as the individuals responsible for these thefts.  (*Id.*, ¶¶ 8-12).

Defendant Drake was a postal worker in the Lakewood, Ohio Post Office.  (*Id.*, ¶ 8).  His primary role in this conspiracy was to steal business checks from the mail.  (*Id.*, ¶¶ 8, 14).  He would then provide them to his co-conspirators, Darrell Smith, Jovaun Woodfolk, Deandre Couts, and Dachi Wheat.  (*Id.*)  In return, Smith, Woodfolk, and Wheat would provide Drake with payment for these stolen checks.  (*Id.*, ¶¶ 8-12, 14).

The co-conspirators would then cash or recruit others to cash these stolen checks, enriching themselves with the proceeds of the scheme.  (*Id.*, ¶¶ 8, 10, 11, 12).  This recruitment was often done over Instagram, where the co-conspirators would seek out individuals with specific bank accounts to deposit the stolen checks.  (*Id.*)  Once the checks were deposited, often

2

using mobile deposit, the individual would keep a portion of the funds for themselves, but send the remainder to either Smith, Woodfolk, and Wheat. (*Id.*)

This scheme proceeded until Drake was caught in October 2022. On October 6, 2022, USPS-OIG agents caught Drake stealing two business checks from the mail — one for $15,085.62 and the other for $5,707.50. (*Id.*, ¶ 13). That same date, Drake had communicated with co-conspirator Smith via Instagram the amounts of these checks. (*Id.*)

In total, Drake stole 127 checks from the mail, totaling $1,988,715.78. (*Id.*, ¶ 15). Of these 127 checks, 63 were cashed, for a total of $1,059,329.94.[1] (*Id.*)

B.      PROCEDURAL HISTORY

On August 20, 2024, the Grand Jury returned an indictment charging Drake with Conspiracy to Commit Bank Fraud, a violation of 18 U.S.C. § 1349 (Count One), Possession of Stolen Mail, a violation of 18 U.S.C. § 1708 (Count Five), and Theft of Mail by Postal Employee, a violation of 18 U.S.C. § 1709 (Count Six). (R. 1: Indictment, PageID 1-13).

On January 23, 2025, Drake plead guilty to Count One and Six of the Indictment, pursuant to a written plea agreement. (Non-Document Order Dated January 23, 2025). He is scheduled for sentencing on May 12, 2025. (Non-Document Order Dated April 15, 2025).

---

[1] The PSR lists the total as $1,053,768.09. However, the undersigned AUSA discovered that one check was inadvertently left off this total, which was valued at $5,561.85. Including this check brings the total amount cashed to $1,059,329.94. In addition, while all these checks were attempted to be cashed, the banks did not release this total amount of funds. Following Drake's plea, each of the banks impacted by Drake's criminal activity were contacted. It was determined that actual losses sustained by the victims totaled $297,969.81, because some of the funds for these checks were not immediately released, or the bank was able to recoup some of the losses from the bank account in which the stolen check was deposited. It is this amount that the United States is requesting be ordered in restitution. A detailed chart outlining the amounts owed to each victim for each check was provided to both Pretrial Services and defense counsel.

3

Pretrial Services issued the final Presentence Investigation Report ("PSR") on April 28, 2025. (R. 56: PSR, PageID 257-293).

### III. SENTENCING GUIDELINES COMPUTATION

The United States concurs with the Guidelines calculations set forth in the PSR. The final PSR calculated a final offense level of 22, based upon the following calculations:

| | | |
|---|---|---|
| Base Offense Level | 7 | §2X1.1(a) |
| Specific Offense Characteristic (intended loss more than $1.5 million, less than $3.5 million) | +16 | §2B1.1(b)(1)(I) |
| Specific Offense Characteristic (10 or more victims) | +2 | §2B1.1(b)(2)(A)(i) |
| Role in the Offense – Position of Public Trust | +2 | §3B1.3 |
| Acceptance of Responsibility | -3 | §3E1.1(a), (b) |
| Zero Point Offender | -2 | §4C1.1(a) |
| **Total Offense Level** | **22** | |

(R. 56: PSR, ¶¶ 23-33, PageID 264-65).

The PSR also correctly calculated Drake as having a criminal history category of I. (*Id.* at ¶ 39, PageID 266). Based upon a total offense level of 22, with a criminal history category of I, the PSR calculated a Guidelines sentencing range of 41-51 months. (*Id.* at ¶ 60, PageID 271).

The Plea Agreement reached a different calculation than reached by the PSR, though the United States does not object to the Guidelines calculation set forth in the PSR. The Plea Agreement provided for an offense level of 24, after acceptance of responsibility. (R. 37: Drake Plea Agreement, PageID 185-86). The reason for this two-offense level discrepancy is because at the time the Plea Agreement was negotiated: (1) the parties had no agreement regarding Drake's criminal history category and (2) victim impact statements had yet to be solicited. Without these two categories of information, the United States was unable to determine if the zero point offender adjustment would apply.

However, based upon the information provided by the PSR, as well as all the information compiled from the victims, the United States agrees that the zero point offender adjustment

4

should apply. Specifically, no victim has provided evidence to show they have sustained substantial financial hardship because of Drake's criminal conduct.

Accordingly, the United States requests that the Court impose a sentence consistent with the Plea Agreement negotiated by the parties and, in addition, apply the zero-point offender adjustment.

## IV. RESTITUTION

The relevant conduct for this conspiracy 127 checks, totaling $1,988,715.78. (R. 56: PSR, ¶ 15). Of these 127 checks, 63 were attempted to be cashed, for a total of $1,059,329.94. (*Id*.) However, several of the victims were able to offset, recoup their losses, or otherwise stop payment on some of these checks. Accordingly, of these 63 checks, the victims sustained losses totaling $297,969.81. Accordingly, the United States is seeking restitution in the amount of $297,969.81. While this amount is different than what is listed in both the Plea Agreement and the PSR, it is based upon updated victim information.[2]

The United States requests that this restitution amount be ordered jointly and severally with Drake's co-defendants. Restitution to the victims is supported by the Guidelines and the law. *See* U.S.S.G. § 5E1.1; 18 U.S.C. § 3663(a)(3). The United States requests that the Court order restitution in the amount of $297,969.81, jointly and severally, as follows:

| Victim | Address | Total Amount |
|---|---|---|
| Bank of America | Bank of America Security Recovery Support MO1-800-06-15 PO Box 790087 St. Louis, MO 63179-0087 | $167,907.63 |
| Huntington National Bank | Huntington National Bank | $3,500.00 |

---

[2] This restitution amount was calculated by compiling information from the victims. The bulk of the loss amount is born by the bank of deposit.

5

|  | Payment Exception Processing<br>5555 Cleveland Avenue<br>GW4W07<br>Columbus, Ohio 43231 |  |
|---|---|---|
| Key Bank | Key Bank<br>Attn: Fraud Case Analysis/Endorsement Desk<br>555 Patroon Creek Blvd.<br>Albany, NY 12206 | $6,006.00 |
| Traveler's Insurance |  | $53,923.92 |
| CCAR Industries | CCAR Industries<br>Attn: Accounting Dept.<br>1530 Lincoln Avenue<br>Charleston, IL 61920 | $5,000.00 |
| Concordia of Ohio | Concordia of Ohio<br>Aka Concordia at Sumner<br>970 Sumner Parkway<br>Copley, OH 44321 | $3,575.16 |
| PNC | PNC Financial Controls<br>101 S. Fifth Street<br>Louisville, KY 40202<br>KI-K201-06-D | $5,710.97 |
| Navy Federal Credit Union | Navy Federal Credit Union<br>Attn: Fraud Operations Group<br>5550 Heritage Oaks Drive<br>Pensacola, FL 32526 | $303.43 |
| Citizen's Bank | Citizen's Bank<br>Attn: Bank-by-Mail (BBM)<br>ROP 370<br>One Citizen Bank Way<br>Johnston, RI 02919 | $16,226.08 |
| Pilgrim's | Pilgrim's<br>Attn: George Welling<br>Procurement Specialist<br>129 Potomac Avenue<br>Moorefield, WV 26836 | $8,437.78 |
| Old National Bank | Old National Bank<br>Attn: Fraud Department<br>1 Main Street<br>Evansville, IN 47708 | $6,286.34 |
| Northwest Bank | Northwest Bank<br>Attn: Fraud Department<br>100 Liberty Street<br>PO Box 128<br>Warren, PA 16365 | $21,092.50 |

In addition, the United States wants the Court to be aware that a total of $7,068.00 U.S. Currency was seized for forfeiture in this case. With respect to this $7,068.00 U.S. Currency, the U.S. Postal Inspection Service has commenced a parallel administrative forfeiture proceeding. Upon the final administrative forfeiture of the $7,068.00 U.S. Currency, the United States plans to seek authorization from the U.S. Department of Justice, Criminal Division, to disburse the $7,068.00 U.S. Currency - through the restoration/petition for remission process — to the victims of Drake's criminal activity.

V. **GOVERNMENT'S SENTENCING RECOMMENDATION**

Based on all the information before the Court, the United States respectfully requests that the Court sentence Drake to a term of imprisonment consistent with the high end of the sentencing range contemplated by the Plea Agreement, in addition to the zero-point offender adjustment. The United States submits that this recommended sentence adequately reflects those statutory factors to be considered under 18 U.S.C. § 3553 (a), particularly (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant;(3) the need for the sentence imposed-to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (4) to afford adequate deterrence to criminal conduct; and (5) to protect the public from further crimes of the defendant. See 18 U.S.C. § 3553 (a).

With respect to nature and circumstances of the offense, this offense resulted in not only financial loss to many victims, but also sowed chaos throughout the Lakewood, Ohio business community. The reason this conspiracy was brought to light was because so many Lakewood, Ohio businesses contacted law enforcement to report stolen checks. In 2022, Drake was routinely stealing business checks from the mail. The number of checks that were stolen in such a short period of time is staggering. In less than a year, 127 checks were stolen, with a value of

$1,988,715.78.  In addition, Drake would often steal checks from the same companies repeatedly, further victimizing them and impacting their business operations.  Drake did this all for his own financial gain, without regard to the havoc he was creating in the area he was supposed to serve.

Drake's history and characteristics also support a sentence within this range.  As an initial matter, the government acknowledges that Drake has a nonexistent criminal history.  However, Drake had a good paying job, with good benefits, and was in a position of trust.  Despite this, Drake chose to steal checks from the mail and distribute them to his co-conspirators.  He had no regard to the community that was being harmed by his behavior or the reputational damage he was causing to the USPS.  The USPS is an institution that the public is supposed to trust — and Drake contributed to the degradation that trust.  A sentence within the range of the Plea Agreement will reflect the seriousness of this offense, and will provide deterrence not only for Drake, but to the postal worker community at large.

In sum, Drake had a complete disregard to the impact his crime had on both the Lakewood community and the USPS.  This justifies a sentence at the high end of the sentencing range contemplated by the Plea Agreement.

**VI.    CONCLUSION**

For the reasons explained above, and those advanced at the sentencing hearing, the United States respectfully requests this Court impose on Drake to a term of imprisonment consistent with the high end of the sentencing range contemplated by the Plea Agreement, along with the zero-point offender adjustment. The United States further requests the Court impose an order to pay restitution in the amount of $297,969.81.

                Respectfully submitted,

                CAROL M. SKUTNIK
                First Assistant United States Attorney

By:   /s/ Brenna L. Fasko
        Brenna L. Fasko (OH: 0084897)
        Assistant United States Attorneys
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3855/3967
        (216) 522-2403 (facsimile)
        Brenna.Fasko@usdoj.gov